1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **CENTRAL DISTRICT OF CALIFORNIA**

10   LAURA C.,                               )   Case No. 2:22-cv-02861-SP
                                             )
11                    Plaintiff,             )
                                             )
12              v.                           )   **MEMORANDUM OPINION AND**
                                             )   **ORDER**
13   KILOLO KIJAKAZI, Acting                 )
     Commissioner of Social Security         )
14   Administration,                         )
                                             )
15                    Defendant.             )
                                             )
16                                           )
                                             )
17   ─────────────────────────────          )

18                                **I.**

19                        **INTRODUCTION**

20          On April 29, 2022, plaintiff Laura C. filed a complaint against defendant, the

21   Commissioner of the Social Security Administration ("Commissioner"), seeking a review

22   of a denial of a period of disability and disability insurance benefits ("DIB").  The parties

23   have fully briefed the matter in dispute, and the court deems the matter suitable for

24   adjudication without oral argument.

25          Plaintiff presents two disputed issues for decision: (1) whether the administrative

26   law judge ("ALJ") properly evaluated the medical opinions and assessed her residual

27   functional capacity ("RFC"); and (2) whether the ALJ properly considered plaintiff's

28

                                              1

1  subjective testimony.  Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at
2  1; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 2.
3       Having carefully studied the parties' memoranda, the Administrative Record
4  ("AR"), and the decision of the administrative law judge ("ALJ"), the court concludes
5  that, as detailed herein, the ALJ properly considered the medical opinions and plaintiff's
6  subjective testimony.  Consequently, the court affirms the decision of the Commissioner
7  denying benefits.

8                                         II.

9                  **FACTUAL AND PROCEDURAL BACKGROUND**

10      Plaintiff was 54 years on her alleged disability onset date.  AR at 60.  Plaintiff
11  attended two years of college and has past relevant work as an administrative assistant.
12  AR at 46, 56, 174.
13      On August 23, 2019, plaintiff filed an application for a period of disability and
14  DIB due to adjustment disorder with depressed mood and anxiety.  AR at 61.  The
15  application was denied initially and upon reconsideration, after which plaintiff filed a
16  request for a hearing.  AR at 79-83, 86-93.
17      On March 26, 2021, plaintiff, represented by counsel, appeared and testified at a
18  hearing before the ALJ.  AR at 40-58.  The ALJ also heard testimony from Marilyn
19  Stroud, a vocational expert.  AR at 53-57.  On April 6, 2021, the ALJ denied plaintiff's
20  claim for benefits.  AR 25-35.
21      Applying the well-known five-step sequential evaluation process, the ALJ found,
22  at step one, that plaintiff had not engaged in substantial gainful activity since July 30,
23  2018, the alleged onset date.  AR at 27.
24      At step two, the ALJ found plaintiff suffered from the severe impairments of:
25  major depressive disorder and persistent complex bereavement disorder.  *Id.*
26      At step three, the ALJ found plaintiff's impairments, whether individually or in
27  combination, did not meet or medically equal one of the listed impairments set forth in 20
28  C.F.R. part 404, Subpart P, Appendix 1.  AR at 28.

The ALJ then assessed plaintiff's RFC,[1] and determined plaintiff had the RFC to perform a full range of work at all exertional levels but was limited to: no workplace hazards and machinery; simple, routine tasks not at a production pace; occasional, brief interactions with supervisors and co-workers; no interactions with the general public; and occasional changes to a routine work setting.  AR at 30.

The ALJ found, at step four, that plaintiff was unable to perform her past relevant work as an administrative assistant.  AR at 33.

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including routing clerk, marker, and office helper.  AR at 34-35.  Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act.  AR at 35.

Plaintiff filed a timely request for review of the ALJ's decision, which the Appeals Council denied.  AR at 1-3.  The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended).  But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the

---

[1]      Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 nn.5-7 (9th Cir. 1989) (citations omitted).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

1  decision to deny benefits.  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001);

2  *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

3        "Substantial evidence is more than a mere scintilla, but less than a preponderance."

4  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant evidence which a

5  reasonable person might accept as adequate to support a conclusion."  *Reddick v. Chater*,

6  157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459.  To determine whether

7  substantial evidence supports the ALJ's finding, the reviewing court must review the

8  administrative record as a whole, "weighing both the evidence that supports and the

9  evidence that detracts from the ALJ's conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's

10  decision "'cannot be affirmed simply by isolating a specific quantum of supporting

11  evidence.'"  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243

12  (9th Cir. 1998)).  If the evidence can reasonably support either affirming or reversing the

13  ALJ's decision, the reviewing court "'may not substitute its judgment for that of the

14  ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

15  **IV.**

16  **DISCUSSION**

17  **A.**    **The ALJ Properly Considered the Medical Opinions When Assessing**

18         **Plaintiff's RFC**

19        Plaintiff contends the ALJ failed to properly consider all of the medical opinions

20  and had a duty to further develop the record.  P. Mem. at 3-8.  Plaintiff argues,

21  consequently, that the ALJ's RFC determination was not supported by substantial

22  evidence because she rejected every medical opinion.  *Id.*

23        Residual functional capacity is what one can "still do despite [his or her]

24  limitations."  20 C.F.R. § 404.1545(a)(1).  The ALJ reaches an RFC determination by

25  reviewing and considering all of the relevant evidence, including non-severe

26  impairments.  20 C.F.R. § 404.1545(a)(1)-(2); see Social Security Ruling ("SSR") 96-8p

27

28

4

1  ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by

2  all of an individual's impairments, even those that are not 'severe.'").[2]

3       Among the evidence an ALJ relies on in an RFC assessment is medical evidence

4  and opinions.  20 C.F.R. § 404.1545(a)(3).  An ALJ considers the persuasiveness of the

5  medical opinions and findings based on five factors: (1) supportability; (2) consistency;

6  (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to

7  support or contradict the medical opinion.  20 C.F.R. § 404.1520c(b)-(c).  The most

8  important of these factors are supportability and consistency.  20 C.F.R.

9  § 404.1520c(b)(2).  The ALJ "must 'articulate . . . how persuasive' [he or she] finds 'all

10  of the medical opinions' from each doctor or other source . . . and 'explain how [he or

11  she] considered the supportability and consistency factors' in reaching these findings."

12  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (quoting 20 C.F.R.

13  § 404.1520c(b)(2)).  The ALJ may, but generally is not required to, explain how she or he

14  considered the other three factors.  20 C.F.R. § 404.1520c(b)(2).  But when two or more

15  medical opinions "about the same issue are both equally well-supported . . .  and

16  consistent with the record . . . but are not exactly the same," the ALJ is then required to

17  explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were

18  considered.  20 C.F.R. § 404.1520c(b)(3).

19       In reaching her RFC determination here, the ALJ considered the medical evidence

20  and plaintiff's statements.  The only opinions in the record regarding plaintiff's mental

21  impairments were the state agency physicians' administrative findings, in which both

---

[2]  "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies.  SSRs are binding on all components of the SSA.  SSRs do not have the force of law.  However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

1  assessed plaintiff's mental impairments as non-severe.[3]  AR at 65-66, 73-75.  The ALJ

2  found the state agency physicians' findings were unpersuasive because the medical

3  evidence was consistent with slightly more limited psychological functioning and

4  plaintiff's treatment was inconsistent with a finding of non-severe mental impairments.

5  AR at 32.  Instead, the ALJ found plaintiff suffered from the severe mental impairments

6  of major depressive disorder and persistent complex bereavement disorder, and assessed

7  functional limitations.  *See* AR at 27, 30.

8         **1.**      **The ALJ Considered All of the Relevant Medical Opinions**

9          Plaintiff argues the ALJ erred by failing to discuss and consider an opinion from

10  Dr. Jarvis B. Ngati.  P. Mem. at 4-5.  The ALJ must articulate how persuasive the

11  medical opinions are and explain how she considered the supportability and consistency

12  factors in reaching her decision.  *See Woods*, 32 F.4th at 792.  But Dr. Ngati's assessment

13  did not constitute a medical opinion under the regulations.  On January 23, 2020, Dr.

14  Ngati examined plaintiff, did not opine any functional limitations, and, instead,

15  concluded she did not meet the criteria for prolonged ongoing disability.  AR at 342-43.

16  Dr. Ngati opined that given the length of time plaintiff had not worked, it would be

17  reasonable for plaintiff to return to work at reduced hours initially.[4]  AR at 343.  Dr.

18  Ngati's assessment was a statement on an issue reserved for the Commissioner – whether

19  plaintiff was able to perform regular or continuing work.  *See* 20 C.F.R.

20  § 404.1520b(c)(3)(i); *see also Rodin v. Comm'r of Soc. Sec.*, 2023 WL 3293423, at *11,

21  *17-*18 (E.D. Cal. May, 5, 2023) (statement that plaintiff was "totally disabled even for

22  the most sedentary work" was not a medical opinion under the regulations); *Callahan v.*

---

23

24       [3]     Because plaintiff only alleges mental impairments, the court will not discuss the opinions regarding plaintiff's physical condition.

25

26       [4]     Plaintiff asserts Dr. Ngati modified her disability status to reflect a limitation of 20 hours/week of work.  P. Mem. at 4.  But the record does not support this assertion.

27  The record reflects Dr. Ngati opined it was reasonable for plaintiff to "return to work at reduced hours for a short time" (AR at 343), and that plaintiff subsequently reported she

28  intended to return to work on a modified schedule of 20 hours/week (AR at 339, 2702).

1    *Kijakazi*, ___ F. Supp. 3d. ___, 2023 WL 2166989, at *8 (E.D. Cal. Feb. 22, 2023) ("[I]f

2    the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ

3    need not provide an analysis of the evidence in his decision.")  As such, the ALJ was not

4    required to provide any analysis about how she evaluated Dr. Ngati's statements.  *See* 20

5    C.F.R. § 404.1520b(c)(3).

6           Moreover, even if the ALJ should have discussed Dr. Ngati's statements, the

7    failure to do so was harmless.  Dr. Ngati opined plaintiff was likely able to do her prior

8    job and that it was in her best interest to return to work sooner, before the expiration of

9    her long-term disability.  AR at 342-43.  Dr. Ngati opined that because plaintiff had been

10   off work for almost 18 months, it was reasonable for her to first return to work at reduced

11   hours for a short time.  AR at 342.  In other words, Dr. Ngati did not opine plaintiff could

12   only perform part-time work, but thought it would be reasonable for plaintiff to ease back

13   into her full-time schedule.  As such, notwithstanding the absence of opined functional

14   limitations, had the ALJ been required to provide analysis on Dr. Ngati's statements, it

15   would not have changed the ALJ's RFC assessment.

16          2.      **The ALJ Did Not Have a Duty to Further Develop the Record**

17          The ALJ considered the state agency physicians' administrative findings and found

18   they were not persuasive.  AR 32; *see* AR at 65-66, 73-75.  Although plaintiff agrees with

19   the ALJ's determination that the state agency physicians' opinions were unpersuasive,

20   plaintiff contends the ALJ had a duty to further develop the record by retaining a

21   consultative examiner or medical expert.  P. Mem. at 4.  Plaintiff further contends the

22   ALJ's RFC determination was therefore not supported by substantial evidence because it

23   was based on her own lay interpretation of the medical record.  *Id.*

24          When the record is ambiguous, the Commissioner has a duty to develop the record.

25   *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *see also Mayes*, 276 F.3d at

26   459-60 (ALJ has a duty to develop the record further only "when there is ambiguous

27   evidence or when the record is inadequate to allow for proper evaluation of the

28   evidence"); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) ("If the ALJ thought he

7

1  needed to know the basis of [a doctor's] opinion[ ] in order to evaluate [it], he had a duty

2  to conduct an appropriate inquiry, for example, by subpoenaing the physician[ ] or

3  submitting further questions to [him or her].").  This may include retaining a medical

4  expert or ordering a consultative examination.  20 C.F.R. § 404.1519a(a).  The

5  Commissioner may order a consultative examination when trying to resolve an

6  inconsistency in evidence or when the evidence is insufficient to make a determination.

7  20 C.F.R. § 404.1519a(b).

8       Here, the record was not ambiguous and plaintiff does not explain how it was.  At

9  the hearing, plaintiff's counsel represented the record was complete.  AR at 45.  The

10  record included the state agency physicians' findings and plaintiff's extensive treatment

11  notes.  The ALJ therefore did not have a duty to order a consultative examination or

12  retain a medical expert.

13       **3.     <u>The RFC Was Supported by Substantial Evidence</u>**

14       Plaintiff contends the ALJ's RFC determination was not supported by substantial

15  evidence because the ALJ rejected all of the medical opinions and formulated an RFC

16  based on her lay interpretation of the medical evidence.  P. Mem. at 4.

17       "[T]he ALJ is responsible for translating and incorporating clinical findings into a

18  succinct RFC."  *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir.

19  2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)).  An ALJ

20  must consider all relevant evidence and resolve conflicts in the medical evidence.  *Batson*

21  *v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  But an ALJ may

22  not act as her own medical expert since she is "simply not qualified to interpret raw

23  medical data in functional terms."  *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999);

24  *see Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ should not make his

25  "own exploration and assessment" as to a claimant's impairments).  Rather, the ALJ's

26  assessment must be supported by substantial evidence.

27       "When an ALJ rejects all medical opinions in favor of his own, a finding that the

28  RFC is supported by substantial evidence is less likely."  *Stairs v. Astrue*, 2011 WL

1  318330, at *12 (E.D. Cal. Feb.1, 2011).  Although that was the case here, this is

2  nevertheless not a situation in which the ALJ independently interpreted raw medical data

3  such as MRIs and discounted the medical opinions in favor of a less restrictive RFC.

4  Instead, the ALJ considered the medical evidence and assessed greater limitations than

5  opined by the state agency physicians.  The state agency physicians opined that plaintiff

6  did not have a severe mental impairment, and they did not assess any functional

7  limitations.  AR at 65-66, 74-75.  The ALJ considered these opinions and found they

8  were not persuasive because the medical evidence supported a severe impairment finding

9  and some psychological limitations.  The ALJ noted plaintiff's participation in extensive

10 and continuing therapy was inconsistent with a non-severe mental impairment, and while

11 her mental status examination findings were relatively stable and normal, her treatment

12 records and subjective symptoms reflected reduced concentration, sadness, overwhelming

13 depression, and anxiety.  *See* AR at 31-32.  Though plaintiff may disagree with the ALJ's

14 RFC determination, it was a rational interpretation of the record and supported by

15 substantial evidence.

16      In sum, the ALJ properly considered all of the relevant medical opinions, and the

17 RFC determination was supported by substantial evidence.

18 **B.    The ALJ Properly Considered Plaintiff's Subjective Testimony**

19      Plaintiff argues the ALJ failed to properly consider her subjective symptom

20 testimony.  P. Mem. at 8-13.  Specifically, plaintiff contends the ALJ failed to specify

21 which limitations she rejected, and her stated reasons for discounting her symptoms were

22 legally insufficient.  *Id.*

23      The court looks to SSR 16-3p for guidance on evaluating plaintiff's alleged

24 symptoms.  In adopting SSR 16-3p, the Social Security Administration sought to "clarify

25 that subjective symptom evaluation is not an examination of an individual's character."

26 SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017).

27      [SSR 16-3p] makes clear what our precedent already required: that

28      assessments of an individual's testimony by an ALJ are designed to evaluate

9

1    the intensity and persistence of symptoms after the ALJ finds that the

2    individual has a medically determinable impairment(s) that could reasonably

3    be expected to produce those symptoms, and not to delve into wide-ranging

4    scrutiny of the claimant's character and apparent truthfulness.

5   *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (cleaned up).

6        To evaluate a claimant's symptom testimony, the ALJ engages in a two-step

7   analysis. *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (citing *Trevizo*,

8   871 F.3d at 678).  First, the ALJ must determine whether the claimant produced objective

9   medical evidence of an underlying impairment that could reasonably be expected to

10  produce the symptoms alleged.  *Id.*  Second, if plaintiff satisfies the first step, and there is

11  no evidence of malingering, the ALJ must evaluate the intensity and persistence of the

12  claimant's symptoms and determine the extent to which they limit her ability to perform

13  work-related activities.  *Id.*

14       In assessing intensity and persistence, the ALJ may consider: the claimant's daily

15  activities; the location, duration, frequency, and intensity of the symptoms; precipitating

16  and aggravating factors; the type, dosage, effectiveness, and side effects of medication

17  taken to alleviate the symptoms; other treatment received; other measures used to relieve

18  the symptoms; and other factors concerning the claimant's functional limitations and

19  restrictions due to the symptoms.  *Id.* (citing 20 C.F.R. § 416.929); SSR 16-3p at *4;

20  *Smolen*, 80 F.3d at 1284.  To reject the claimant's subjective symptom statements at step

21  two, the ALJ must provide "specific, clear, and convincing" reasons, supported by

22  substantial evidence in the record, for doing so.  *Burrell v. Colvin*, 775 F.3d 1133, 1136-

23  37 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281, 1283-84.

24       At the first step, the ALJ here found plaintiff's medically determinable

25  impairments could reasonably be expected to cause some symptoms.  AR at 32.  At the

26  second step, because the ALJ did not find any evidence of malingering, the ALJ was

27  required to provide clear and convincing reasons for discounting plaintiff's testimony.

28  The ALJ discounted plaintiff's testimony because: (1) the severity of plaintiff's alleged

10

1   limitations was inconsistent with the medical records; (2) plaintiff received conservative

2   treatment; and (3) plaintiff's alleged limitations were inconsistent with her daily

3   activities.  AR at 33.

4        In the Function Report dated November 20, 2019, plaintiff reported that her

5   impairment affected her ability to complete tasks, concentrate, understand, follow

6   instructions, and get along with others.  AR at 186.  Plaintiff stated she cooked "easy

7   food" and could start but not finish cleaning.  AR at 183.  Plaintiff reported she would

8   leave the house to go to church, attend group therapy, go to doctor appointments, and

9   shop for groceries, but she would spend the day in bed two or three times a week.  AR at

10   182-84.

11        At the hearing, plaintiff testified she could not concentrate, was deeply sad, had

12   difficulties with comprehension and focus, and required time to understand what she

13   needs to do.  AR at 49-51.  Plaintiff testified that she does not get along with people and

14   needs to avoid large crowds, loud noise, and social events.  AR 49, 52-53.  Plaintiff

15   further testified she can cook, shop, and do chores, but she stops her chores when she is

16   mentally tired and is unable to complete chores two to three times a month.  AR at 51-52.

17        As an initial matter, contrary to plaintiff's assertion, the ALJ did not reject all of

18   plaintiff's symptom testimony.  The ALJ considered plaintiff's medical record and

19   testimony and concluded that plaintiff's "reduced concentration, difficulty understanding,

20   social avoidance, recurring thoughts, guilt/shame, irritability/anger, sadness,

21   overwhelming depression, and anxiety" necessitated the assessed limitations.  AR at 31.

22   But the ALJ did discount the intensity, persistence, and limiting effects of plaintiff's

23   alleged symptoms.

24        First, the ALJ found there were inconsistences between plaintiff's statements and

25   the medical records.  AR at 28-29, 31, 33; *see Rollins v. Massanari*, 261 F.3d 853, 856

26   (9th Cir. 2001) (lack of objective medicine supporting symptoms is one factor in

27   evaluating testimony).  The ALJ noted the mental status examination findings were

28   relatively stable and that although plaintiff regularly presented with a depressed mood,

1    the other findings were otherwise normal, including normal memory, normal

2    concentration, intact insight and judgment, logical thought process, unimpaired impulse

3    control, and cooperative behavior.  AR at 31.  Specifically, the ALJ found that plaintiff's

4    allegations of difficulty understanding and following instructions were inconsistent with

5    mental status examination findings revealing an intact memory and a logical thought

6    process; her allegations that she had problems getting along with people were

7    inconsistent with examination findings revealing good eye contact and cooperative

8    behavior; and her allegations of difficulty concentrating and a short attention span were

9    inconsistent with mental status examination findings revealing normal concentration.  AR

10   28-29; *see Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (the court must look

11   at the ALJ's explanation in "all of the pages" of the decision).  The record supports the

12   ALJ's findings.  *See, e.g.,* AR at 244, 248-49, 348, 662, 1975, 2322-23, 2786, 3365.

13        The ALJ's second reason for discounting plaintiff's allegations was she received

14   conservative treatment.  AR at 31, 33; *see Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir.

15   2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's

16   testimony regarding severity of an impairment.").  The ALJ noted that plaintiff

17   participated in medication management and extensive group and individual therapy, but

18   did not require inpatient treatment.  AR at 31.  The mere lack of psychiatric

19   hospitalization, however, is insufficient to constitute conservative treatment.  *See Tammy*

20   *L. O. v. Comm'r*, 2018 WL 3090196, at *13 (D. Or. June 20, 2018) (the "mere fact that a

21   claimant has not been admitted to a hospital on an inpatient basis" does not mean that a

22   claimant received conservative treatment*); Matthews v. Astrue*, 2012 WL 1144423, at *9

23   (C.D. Cal. Apr. 4, 2012) (finding that claimant's care was not conservative because

24   although claimant was not hospitalized, he received outpatient care and took psychotropic

25   medication).  The fact that plaintiff was taking three psychiatric medications and

26   undergoing "extensive group and individual therapy" indicated her treatment was not

27   conservative.  AR at 31, 363, 2838; *see, e.g., Drawn v. Berryhill*, 728 F. App'x 637, 642

28   (9th Cir. 2018) (rejecting characterization of treatment as conservative where claimant

1  was taking "a number of psychiatric medications"); *Jennifer C.G. v. Kijakazi*, 2023 WL

2  5592752, at *6 (C.D. Cal. Aug. 29, 2023) (treatment consisting of multiple psychiatric

3  medications was not conservative); *Sanchez v. Berryhill*, 2018 WL 5848856, at *5 (C.D.

4  Cal. Nov. 6, 2018) (plaintiff's psychotropic medications, including Trazadone and

5  Bupropion, and monthly psychiatric visits was not conservative in the mental health

6  context).

7        Finally, the ALJ discounted plaintiff's symptoms because they were inconsistent

8  with her daily activities.  AR at 33; *see Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th

9  Cir. 2002) (in making a credibility determination, an ALJ may consider inconsistencies

10  between a claimant's testimony and conduct).  The ALJ noted that plaintiff could drive,

11  perform household chores with help, shop for groceries, take computer classes to

12  redevelop her skills, and perform personal care independently.  AR at 33.  The ALJ found

13  that plaintiff's ability to prepare meals and handle finances was inconsistent with her

14  alleged difficulty understanding and following directions; her ability to shop, attend

15  church, attend support groups, and spend time at the local park was inconsistent with her

16  allegations about problems getting along with others; and her ability to drive, shop, and

17  take computer classes was inconsistent with her alleged difficulties concentrating.  AR at

18  28-29.  Although plaintiff may disagree with the ALJ's conclusions, the evidence can

19  reasonably support the determination.

20        Accordingly, the ALJ cited two clear and convincing reasons supported by

21  substantial evidence for discounting plaintiff's subjective testimony.  This was legally

22  sufficient.

23  //

24  //

25

26

27

28

13

## V.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

Dated: September 26, 2023

SHERI PYM
United States Magistrate Judge

14